GENERAL INJECTABLES
& VACCINES, INC.,
Appellant,

v.

Robert M. GATES, Secretary
of Defense, Appellee.

No. 2007–1119.

United States Court of Appeals,
Federal Circuit.

June 3, 2008.

Bruce E. Fader, Proskauer Rose LLP, of New York, NY, filed a combined petition for panel rehearing and rehearing en banc for appellant. With him on the petition was James F. Segroves, of Washington, DC.

Before MAYER and BRYSON, Circuit Judges, and FOGEL, District Judge.*

ON PETITION FOR REHEARING

BRYSON, Circuit Judge.

General Injectables & Vaccines, Inc. ("GIV") has filed a petition for rehearing in which it contends that the panel's interpretation of the "excusable delays" provision at issue in this case, FAR 52.212–4(f), conflicts with several Court of Claims decisions, *Poloron Products v. United States*, 126 Ct.Cl. 816, 116 F.Supp. 588 (1953), *Climatic Rainwear Co. v. United States*, 115 Ct.Cl. 520, 88 F.Supp. 415 (1950), and

---

* Honorable Jeremy Fogel, District Judge, United States District Court for the Northern District of California, sitting by designation.

**1376**

*H.B. Nelson Construction Co. v. United States,* 87 Ct.Cl. 375 (1938). We think it appropriate to supplement our earlier opinion to address that contention.

FAR 52.212–4(f) reads as follows:

The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers.

The panel opinion interpreted that provision consistently with the general rule that an unexcused default by a subcontractor does not excuse nonperformance by the prime contractor. *See Johnson Mgmt. Group CFC, Inc. v. Martinez,* 308 F.3d 1245, 1252 (Fed.Cir.2002) ("A contractor is responsible for the unexcused performance failures of its subcontractors.") (citing cases); *Hutton Contracting Co. v. City of Coffeyville,* 487 F.3d 772, 779 (10th Cir. 2007) ("The most reasonable interpretation of 'fault of [Hutton]' in the force-majeure clause is 'fault of Hutton and those to whom it delegates its responsibilities under the contract.'"); *In re Mary Rogers Manley d/b/a Mary Rogers Real Estate,* HUDBCA No. 76–27, 78–2 B.C.A. (CCH) ¶ 13,519, at 66248, 1978 WL 2465 (Oct. 25, 1978) ("The principle is well established that the prime contractor is responsible for unexcused failures of performance by its subcontractors."); *In re Pelton Water Wheel Co.,* IBCA 16, 1955 WL 29 (Oct. 12, 1955) ("Delays of a subcontractor do not excuse the prime contractor from performing on time unless the subcontractor's difficulty itself results from an excusable cause under the contract.").[1]

GIV argues that *Poloron Products, Climatic Rainwear,* and *H.B. Nelson* stand for the proposition that if the contractual delay provision does not separately state that the contractor is liable for the unexcused actions of its subcontractor, then subcontractor delays are excusable as long as the contractor acted reasonably in selecting the subcontractor. In fact, those cases do not state that rule expressly, nor can the cases fairly be read as adopting such a rule implicitly.

The delay provisions in all three of the cited cases specified that the contractor would not be liable for delays due to "unforeseeable causes" beyond its control. The court in each of those cases focused on the foreseeability of the problem that resulted in the delay, not on whether the problem was foreseeable to the contractor as opposed to the subcontractor. In fact, in *Climatic Rainwear,* the court observed that the problem was "clearly unforeseeable on the part of everyone associated with the contract," including the subcontractor. 88 F.Supp. at 426. In *Poloron Products,* the court found the delay caused by the subcontractor to be foreseeable to

**1.** In a 1950 decision, the Armed Services Board of Contract Appeals refused to grant the government's request for liquidated damages under a pre-FAR "Delays–Liquidated Damages" clause when a subcontractor's nonperformance caused the contractor's performance to be delayed. *John Andresen & Co.,* ASBCA No. 633 (Dec. 13, 1950). The language of standard government contract clauses was subsequently changed to overcome the *Andresen* case, and GIV has not relied on *Andresen* or any of the other contemporaneous ASBCA decisions. In any event, the ASBCA has since characterized *Andresen* as an example of the "exceptional circumstances which have at times led the Board to relieve an appellant contractor of ... responsibility [for its supplier's unexcused defaults]." *L & P Food Serv. Equip. Co.,* ASBCA No. 11007, 66–1 B.C.A. (CCH) ¶ 5659, at 26,405, 1966 WL 444 (June 29, 1966).

the contractor and therefore not excused. 116 F.Supp. at 595. And in *H.B. Nelson* the court regarded the failure of common carriers to deliver undamaged goods to be unforeseeable, without addressing the question whether the common carriers should be regarded as subcontractors for purposes of determining whether the plaintiff had established a valid excuse to performance. 87 Ct.Cl. at 375.

■ In a subsequent decision, the Armed Services Board of Contract Appeals noted that the *H.B. Nelson* case focused on the issue of foreseeability and did not establish any broad principle limiting the normal rule that a contractor is liable for the unexcused defaults of its subcontractors. *See In re Hogan Mech., Inc.,* ASBCA No. 21612, 78–1 B.C.A. (CCH) ¶ 13,164, at 64,334, 1978 WL 2347 (Mar. 30, 1978) ("The Nelson case ignored the subcontractor issue and premised its decision completely upon the foreseeability issue"). We agree with that characterization, and we think the characterization applies equally to the other two cases on which GIV relies. We thus do not regard those cases as implicitly rejecting the longstanding rule discussed in the panel opinion and applied in this case. In fact, both the Court of Claims and this court, in cases post-dating the three cases on which GIV relies, have endorsed the principle that prime contractors are ordinarily responsible for the unexcused performance failures of their subcontractors. *See Johnson Mgmt. Group,* 308 F.3d at 1252; *Olson Plumbing & Heating Co. v. United States,* 221 Ct.Cl. 197, 602 F.2d 950, 957 (1979).

■ The *H.B. Nelson* case is distinguishable on another ground as well: it dealt with a failure of proper and timely delivery by a common carrier. A common carrier stands in a very different position from a supplier of the goods that the contractor has agreed to provide to the government. The Veterans Administration Board of Contract Appeals in *In re Malan Construction Corp.,* VABCA No. 262, 1960 WL 148, 151 (June 17, 1960), distinguished *H.B. Nelson* on that ground: "The court obviously considered the case as involving an accident, the circumstances of which were not known, occurring when the equipment was in the custody of common carriers and beyond the control of the subcontractor who fabricated it and the contractor who ordered it." *Id.* at 4. The importance of the distinction between a supplier and a common carrier is underscored by the fact that the *H.B. Nelson* case would not be decided differently under the FAR provision that was applied in this case. That provision, FAR 52.212–4(f), includes "delays of common carriers" among the conditions that constitute valid excuses for nonperformance because they are considered "beyond the reasonable control of the Contractor." Thus, nothing in the *H.B. Nelson* case is contrary to our ruling that under FAR 52.212–4(f) the failure of a contractor's supplier does not provide a valid excuse for contractor nonperformance unless the supplier's failure is shown to be excusable.

It is worth noting the implications of GIV's argument if it were to be adopted. GIV's contention that failure on the part of a subcontractor/supplier results in an excusable delay for the contractor would place a contractor who procures contract goods through subcontract in a better position with respect to the risk of nonperformance than a contractor who manufactures the contract goods itself. Thus, if the government had contracted directly with Chiron for the production of the vaccine, and the same problem had developed in Chiron's production facilities, Chiron would have had to show that the problem fell within the "excuse" clause in order to avoid default. *See* 14 James P. Nehf, *Cor-*

*bin on Contracts* § 74.16, at 104 (2001) (burden of proving impossibility rests on party asserting it). By virtue of the subcontract arrangement, however, GIV contends that it can avoid liability for breach even if it cannot show that Chiron's failure to produce the vaccine is excusable. To allow that form of risk reallocation through subcontracting would be difficult to justify as a matter of procurement policy.

GIV's implicit response to such policy objections is that the government could cure the problem by specifically including a reference to subcontractors in its "excusable delays" clause and that not having inserted such a reference in FAR 52.212–4(f), the government must live with the consequences. We do not agree with GIV, however, that contractors should be liable for unexcused nonperformance by their subcontractors only if the contract contains a specific clause covering such a contingency. Instead, we interpret the default rule, absent contractual language to the contrary, to be that contractors are bound by the unexcused nonperformance of their subcontractors. Moreover, we are not persuaded that the "excusable delays" provision in FAR 52.212–4(f) was intended to depart from that rule, and we are not persuaded that the older Court of Claims cases on which GIV relies require us to interpret the "excusable delays" clause in a manner that would put it at odds with that rule.

GIV acknowledges that the normal rule under the FAR is that the contractor is responsible for the unexcused defaults of its subcontractors or suppliers. *See* John Cibinic, Jr., Ralph C. Nash, Jr., & James F. Nagle, *Administration of Government Contracts* 555 (4th ed. 2006) ("Under the clauses currently in use ... before the contractor can be excused, it must be shown that the cause of delay was beyond the control and without the fault or negligence of the contractor and all intervening contractors including the delayed subcontractor."). GIV argues, however, that the "excusable delays" clause at issue in this case, FAR 52.212–4(f), must be interpreted to include subcontractor nonperformance among the causes of excusable delay because other FAR provisions dealing with default and excusable delay contain express language excluding unexcused subcontractor defaults. *See* FAR 52.249–8(c)–(d), 52.249–9(c)–(d), 52.249–10(b)(1), 52.249–14. The inference that GIV wishes us to draw from the fact that other FAR clauses use different language is weakened by the fact that FAR 52.212–4(f) was added to the FAR in 1995, long after the other cited clauses. Moreover, whatever force that inference may have is outweighed by the fact that the Federal Acquisition Circular issued at the time FAR 52.212–4 was promulgated stated that the new regulation "contains the terms and conditions believed to be consistent with customary commercial practice." 60 Fed.Reg. 48,206, 48,207 (1995). In that respect, the regulations complied with the directive in section 8002(b)(1)(B) of the Federal Acquisition Streamlining Act, Pub.L. No. 103–355, 108 Stat. 3243, 3386 (1994), codified at 41 U.S.C. § 264 note, which provided that the new FAR regulations governing the acquisition of commercial items should include contract clauses "that are determined to be consistent with standard commercial practice." As applied to the issue of "excusable delays," we interpret those statements as indicating an intention to adopt the normal rule that "[t]he contractor alone is responsible for the deficiencies of its suppliers and its subcontractors absent a showing of impossibility." *Olson Plumbing & Heating*, 602 F.2d at 957. *See Wellington House v. GSA*, GSBCA No. 14665, 99–1 B.C.A. (CCH) ¶ 30,279, at 149,734, 1999 WL 107425 (Mar. 3, 1999) (stating, in a case governed by FAR 52.212–4(f), that "an 'excusable default' is normally said to be one which is beyond the

control, fault or negligence of both the contractor and the subcontractor").

Nearly a century ago, the Supreme Court provided an admirably succinct explanation of the rationale for the rule we have applied here, in an opinion dealing with a contract to supply goods to the government. In that case, *Carnegie Steel Co. v. United States*, 240 U.S. 156, 36 S.Ct. 342, 60 L.Ed. 576 (1916), the Court stated that difficulties in procuring goods that were to be supplied under the contract were not the kinds of unavoidable causes of delay, "such as fires, storms, labor strikes, actions of the United States, etc." that would render the delay excusable. The Court explained:

> It would seem that the very essence of the promise of a contract to deliver articles is to procure or make them.... [The contract] would have no sense or incentive, no assurance of fulfillment, otherwise; and a delay resulting from the absence of such ability is not of the same kind enumerated in the contract— is not a cause extraneous to it and independent of the engagements and exertions of the parties.

240 U.S. at 164–66, 36 S.Ct. 342. As in *Carnegie Steel,* GIV's sole responsibility under the contract in this case was to deliver vaccines to the government. GIV bore the risk of not being able to perform unless it could show that the reason for its failure to perform fell within the causes set forth in the "excusable delay" clause. It could not shift that risk to the government simply by subcontracting production of the vaccine to a third party.

The other arguments GIV presents in its petition for rehearing have already been addressed in the original panel opinion.

The petition for rehearing is denied.