ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of –                                              )
                                                         )
John's Tile and Carpet Service            )          ASBCA No. 61479
                                                         )
Under Contract No. N00189-17-P-1148    )

APPEARANCE FOR THE APPELLANT:            Mr. John Newsome
                                                           Owner

APPEARANCES FOR THE GOVERNMENT:          Craig D. Jensen, Esq.
                                                           Navy Chief Trial Attorney
                                                         Andrew N. Christopher, Esq.
                                                           Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE SHACKLEFORD

        This is an appeal from a final decision terminating for cause a contract for delivery, replacement and installation of carpet tiles at a building on Naval Station Norfolk. The parties elected to submit the appeal on the record pursuant to Board Rule 11. The government submitted a Rule 11 brief and appellant asked us to consider its letter of May 11, 2018 and its responses to the government's discovery requests dated September 6, 2018 as its Rule 11 brief. No replies were submitted. In addition to the briefs, the record consists of the Rule 4 file submitted by the government.

FINDINGS OF FACT

        1. Solicitation No. N0018917Q0115 was a request for quotations (RFQ) issued as a small business set aside for Carpet Replacement and Installation at Sewells Point Safety Office Naval Station Norfolk, for a firm fixed price in accordance with an attached Statement of Work (SOW). (R4, tab 1 at 1-3, 44)[*]

        2. In pertinent part the SOW provided as follows:

                Remove existing carpet tiles and install new carpet tiles in
                offices as well as common areas. Carpeting shall be
                installed by trained installers trained in the installation of
                commercial carpeting in projects of similar size and scope
                specified herein. Carpet replacement work activities shall

---

[*] Page numbers refer to consecutive numbers on the documents and not the original
     pagination on each document.

include removal of old carpet and installation of new carpet tiles. The Contractor shall retain debris including old carpet tiles, empty cardboard containers, adhesive rollers, plastic sheets, etc. and legally dispose the debris. Scrape old glue or tile pieces, if stuck to the floor surface. The floor surface to receive new carpet shall be smooth, free from loose particles or any foreign materials or humps. If the Contractor spills any adhesive, or in any way soils the walls or other furnishings, the Contractor shall clean up using a specialist at the Contractor's expense.

The Contractor shall move the modular workstations and office furniture to install carpet behind/under them. Following completion of carpet replacement in each phase, the Contractor shall return the furniture to their original position.

The Contractor shall bear complete responsibility for management of carpeting work at site, control for the sub-contracted services, and complete responsibility for safe performance of work at site and comply with all local laws pertaining to construction labor and safety.

(R4, tab 1 at 44)

3. A mandatory pre-quote site visit was set forth in the SOW and it was held on July 19, 2017 (R4, tab 1 at 43, tab 17 at 180; *see also* finding 5 below). On August 8, 2017, Commercial Items Contract No. N0018917-P-1148 was awarded to John's Tile and Carpet Service (JTCS or appellant) to perform carpet replacement and installation at the firm fixed-price of $31,680 in accordance with the SOW (which was also included in the contract) and with a delivery date of October 7, 2017 (R4, tab 2 at 55, 57, 74-75).

4. The contract incorporated by reference FAR 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JAN 2017) which included the following relevant provisions:

(a) Inspection/Acceptance. The Contractor shall only tender for acceptance those items that conform to the requirements of this contract. The Government reserves the right to inspect or test any supplies or services that have been tendered for acceptance. The Government may require repair or replacement of nonconforming supplies or

2

re-performance of nonconforming services at no increase in contract price. If repair/replacement or re-performance will not correct the defects or is not possible, the Government may seek an equitable price reduction or adequate consideration for acceptance of nonconforming supplies or services. The Government must exercise its post acceptance rights (1) within a reasonable time after the defect was discovered or should have been discovered; and (2) before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.

. . . .

(f) Excusable delays. The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers. The Contractor shall notify the Contracting Officer in writing as soon as it is reasonably possible after the commencement of any excusable delay, setting forth the full particulars in connection therewith, shall remedy such occurrence with all reasonable dispatch and shall promptly give written notice to the Contracting Officer of the cessation of such occurrence.

. . . .

(m) Termination for cause. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly

3

terminated this contract for default, such termination shall be deemed a termination for convenience.

. . . .

(o) Warranty. The Contractor warrants and implies that the items delivered hereunder are merchantable and fit for use for the particular purpose described in this contract.

(R4, tab 2 at 58-59, 62)

5. The SOW included a clause making a site visit mandatory, as follows:

Dimensions of the work station provided on this solicitation are estimated only. Quoters are mandatory [sic] to visit the site in order to properly scope and measure the offices for the services required prior to submitting their quote. The first-hand knowledge and familiarity with the work site as a result of the site visit shall enable the vendor to provide and submit a reasonable price quote in response to this solicitation.

(R4, tab 1 at 43) The site visit was held on July 19, 2017 (*id*.).

6. On August 17, 2019, after award of the contract, Mr. John Newsome (owner of JTCS) visited the Navy office for an additional pre-performance site visit. Ms. Charisse Averett, the Sewell Point Safety Office Hazard Abatement Supervisor and the point of contact for the contract, escorted Mr. Newsome around the office, showing him existing areas the contractor would have to correct, including humps in the floor and uneven areas. (R4, tab 17 at 180-81)

7. About two weeks after Mr. Newsome's site visit, water leakage affected the work site but it dried out by the time contract work began (*id.* at 181).

8. Performance commenced on or about September 8, 2017 when a team of seven workers removed the old carpet for disposal and prepared the floors for carpet installation (compl. at 1). Work thereafter continued on various dates through October 2, 2017, and on October 3, 2017, JCTS submitted an invoice to the contracting officer and stated:

This is to inform you that John's Tile & Carpet Service believes the carpet installation job has been completed. However, we understand there is an outstanding issue to be resolved and that you will be requested to provide a final

4

determination as to whether the job was completed satisfactorily. Please provide your feedback once that determination is made.

(R4, tab 4 at 83)

9. Ms. Averett recounts that during an inspection of the work held on October 3, 2017 she and other Navy personnel noted several deficiencies in the work performed as follows:

    a. Carpet is coming up
    b. Old glue not removed from the floor
    c. Can see seams in the carpet
    d. Glue is on top of new carpet
    e. Base cover not placed behind modular furniture
    f. Carpet not placed behind modular furniture
    g. Old carpet backing was not removed from the floor
    h. Glue adhesive was not placed in some areas
    i. Carpet looks discolored due to how it was placed

(R4, tab 6 at 91-92) Photographs of the defective work substantiate the allegation of defective work (R4, tab 8 at 0098-0123).

10. On October 3, 2017 the CO (Ms. Rashida Bennett), Ms. Averett, and Mr. Newsome had a telephone discussion regarding the various performance issues identified by Ms. Averett and the CO (*id*. at 92). Later that day the CO issued a cure notice stating that the government considered the contractor's failure to provide satisfactory carpet installation to potentially form a basis for termination for cause. Further she said that if the deficiencies were not cured immediately, she would terminate the contract under FAR 51.212-4(m). (R4, tab 5 at 88)

11. A walk-through between Navy and JCTS personnel was scheduled for and took place on October 4, 2017. During the walk-through Naval personnel showed Mr. Newsome areas in which the Navy believed the contract work was deficient, including old glue which was not removed, old tile pieces that were not scraped from the floors, carpets which were not installed in the right direction, humps that remained in some areas, glue not sticking to the carpet, seams which were visible, carpet which was not placed under and behind modular furniture and base covers not installed in all areas. (R4, tab 7 at 93-95)

12. Appellant responded to the cure notice on October 10, 2017 wherein Mr. Newsome provided a timeline for work performed under the contract (R4, tab 12 at 137-38).

13. Mr. Newsome states that when all of the items that Ms. Averett wanted reworked were completed, she was asked to and did perform an inspection. Upon completion of that inspection, Mr. Newsome relates that she yelled at him in front of several people, stated that he would get no money for the work because she was not satisfied. Thereafter, according to Mr. Newsome, she ordered him to leave the base or else she would have him removed by the military police. (*Id.* at 138) However, photographs from that inspection continue to show defective work (R4, tab 15).

14. Mr. Newsome "believes the work was performed in accordance with the contract statement of work with the exception of installing the wall base behind the workstations in the large area" and says that Ms. Averett took possession of the wall base, for which he offered a discount for not having installed it. (*Id.*)

15. On December 6, 2017, the contracting officer issued a final decision terminating the contract for cause (R4, tab 19), and thereafter, JCTS filed a timely notice of appeal dated December 21, 2017, received by the Board on January 10, 2018.

DECISION

A termination for default is a drastic sanction that should be imposed only for good grounds and on solid evidence. *J. D. Hedin Construction Co. v. United States*, 408 F.2d 424, 431 (Ct. Cl. 1969). The government bears the burden of proving by a preponderance of the evidence that the termination was justified. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987). If the government establishes a prima facie case of the contractor's default, then the contractor bears the burden to show that its default was excusable or was caused by the government's material breach. *Military Aircraft Parts*, ASBCA No. 59978, 15-1 BCA ¶ 36,101 at 176,256. These principles apply equally in the case of a termination for cause under FAR 52.212-4(m). *Genome-Communications*, ASBCA No. 57267, 11-1 BCA ¶ 34,699 at 170,889 (citing *General Injectables & Vaccines, Inc.*, ASBCA No. 54930, 06-2 BCA ¶ 33,401 at 165,593), *aff'd*, 519 F.3d 1360, *supplemented*, 527 F.3d 1375 (Fed. Cir. 2008)).

We find that the government has met its initial burden to show by a preponderance of the evidence that the termination was justified. The photographic evidence clearly shows that the work was defective and was not performed as required by the contract. It is then the burden of appellant to show that its default was excusable or was caused by the government's material breach and it has failed to do so.

6

## CONCLUSION

The appeal is denied.

Dated:  April 8, 2020

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61479, Appeal of John's Tile and Carpet Service, rendered in conformance with the Board's Charter.

Dated:  April 9, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

7