# United States Court of Appeals for the Federal Circuit

2007-1119

GENERAL INJECTABLES & VACCINES, INC.,

Appellant,

v.

Robert M. Gates, SECRETARY OF DEFENSE,

Appellee.

Bruce E. Fader, Proskauer Rose LLP, of New York, New York, argued for appellant. With him on the brief was James P. Holloway, of Washington, DC.

Robert C. Bigler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director.

Appealed from: Armed Services Board of Contract Appeals

Administrative Judge Carroll C. Dicus, Jr.

# United States Court of Appeals for the Federal Circuit

2007-1119

GENERAL INJECTABLES & VACCINES, INC.,

Appellant,

v.

Robert M. Gates, SECRETARY OF DEFENSE,

Appellee.

Appeal from the Armed Services Board of Contract Appeals
In No. 54930

_____

DECIDED:  March 19, 2008
_____

Before MAYER and BRYSON, <u>Circuit Judges</u>, and FOGEL, <u>District Judge</u>.<sup>*</sup>

BRYSON, <u>Circuit Judge</u>.

General Injectables & Vaccines, Inc. ("GIV") appeals a decision of the Armed Services Board of Contract Appeals affirming the termination of a government contract for default.  We affirm.

_____

<sup>*</sup>    Honorable Jeremy Fogel, District Judge, United States District Court for the Northern District of California, sitting by designation.

I

On January 14, 2004, the Defense Supply Center Philadelphia ("DSCP"), an agency within the Department of Defense, issued a solicitation requesting bids for influenza vaccine for the 2004-2005 flu season. GIV, a wholesale distributor of pharmaceuticals and supplies, submitted its initial bid on February 13, 2004. In that bid, GIV noted that it might "have to alter delivery schedule outlined in bid due to releases of vaccine."

The DSCP awarded the contract to GIV on April 21, 2004. The final contract amended the "Delivery" subsection to specify that delivery was "[d]ependent on FDA release of vaccine." Twenty-five percent of the total awarded quantity was to be delivered "no later than" September 30, 2004, another 25 percent by October 31, 2004, and the final 50 percent by November 30, 2005. The contract acknowledged that Chiron Vaccines, located in Liverpool, United Kingdom, would be responsible for the vaccine manufacturing and packaging. The contract also incorporated by reference FAR 52.212-4(f), which provides for "Excusable delays":

> The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers.

In late August 2004, Chiron discovered that certain lots of its vaccine were contaminated by bacteria. Chiron notified the FDA and indicated that it would not release any additional lots of vaccine without the approval of U.S. and U.K. authorities. British authorities inspected Chiron's facilities in September and, on October 5, 2004, suspended its license to operate for three months.

In response to numerous inquiries by the DSCP, GIV sent the DSCP a letter on October 12, 2004, indicating that because of Chiron's manufacturing problems, GIV would most likely not be able to deliver any vaccine:

> This letter is to advise you that we have been informed by Chiron, our supplier of Fluvirin Influenza Vaccine, that it will not be able to supply any flu vaccine for the 2004-2005 flu season. As you have probably heard, [British authorities have] temporarily suspended Chiron's license to manufacture Fluvir[i]n vaccine preventing the company from releasing any product for the 2004-2005 influenza season. As a consequence, we will be unable to fill any orders for Fluvir[i]n vaccine for the current flu season.

> We deeply regret the unfortunate developments and we are doing everything possible to identify potential alternative sources of flu vaccine. However, because of the late timing of this unexpected development, we are not optimistic that we will be able to identify alternative sources of supply that could meet all or any option of your order.

On October 15, the FDA banned further imports of Fluvirin and ordered all existing U.S. stocks not to be distributed for use.

Subsequently, the DSCP contracting officer terminated GIV's contract for default. The final decision, issued on November 15, 2004, indicated that GIV "failed to make timely delivery . . . and . . . such failure was not due to excusable causes."

GIV appealed to the Armed Services Board of Contract Appeals, alleging that its performance had not become due because the condition precedent of "FDA release" had not occurred given the FDA's embargo and freeze of domestic lots of Fluvirin. GIV also contended that any nonperformance was excused under FAR 52.212-4(f) because of "acts of the government" that were beyond the reasonable control of GIV.

The Board affirmed the termination for default. On cross-motions for summary judgment, the Board concluded that the condition precedent did not apply because GIV and Chiron were responsible for the failure to manufacture an acceptable product, which was the cause of the FDA's refusal to release Fluvirin. The Board likewise

concluded that "acts of the government" did not excuse nonperformance because the relevant act, the FDA approval process, was contingent on GIV's delivery of conforming Fluvirin. In reaching those conclusions, the Board found that GIV was responsible for the actions of Chiron because GIV was a distributor that contracted with the government to sell Fluvirin, and that it did not simply act as a common carrier for the vaccine.

II

The principles governing the failure to deliver contract goods are well established. A contractor's failure to make timely delivery of agreed-upon goods establishes a prima facie case of default. See Nuclear Research Corp. v. United States, 814 F.2d 647, 650 (Fed. Cir. 1987). The burden then shifts to the contractor to show that the failure to deliver the contract goods was excusable. See DCX, Inc. v. Perry, 79 F.3d 132, 134 (Fed. Cir. 1996). An excusable failure of timely delivery occurs when the failure is "caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence." FAR 52.212-4(f); DCX, 79 F.3d at 134. The Board in this case concluded that GIV had failed to satisfy its obligation to produce vaccine that satisfied the requirements of the contract, and that it had failed to show that the default was excusable.

On appeal, GIV asserts that its failure to deliver any vaccine did not constitute a default because the condition precedent of FDA release of the vaccine had not occurred. Alternatively, GIV argues that if there was a default, it was excused under FAR 52.212-4(f).

A

GIV argues that FDA release of the vaccine was a condition precedent to GIV's delivery obligation. Accordingly, GIV contends that once it showed that the condition precedent did not occur, the burden shifted to the government to show that some misconduct by GIV prevented the condition precedent from being satisfied. Thus, GIV contends that the government should have been required to prove that GIV was responsible for Chiron's failure to produce uncontaminated vaccine, and that because the government did not prove GIV's fault, it cannot be found in default. We disagree with GIV's analysis.

The parties plainly understood that the essence of contract performance was production of vaccine that complied with the governing standards applied by the FDA. Moreover, GIV does not suggest that the actions of either the British authorities or the FDA in preventing distribution of the Chiron vaccine were improper. Thus, GIV's failure to supply the vaccine constituted a simple failure of performance. To be sure, the "condition precedent" of FDA release of the vaccine was also not satisfied, but this is principally a case about failure to perform, not a case about the failure of a condition precedent over which the contractor had no control. Accordingly, the Board properly concluded that GIV failed to perform as required by the contract, and that the failure of the "condition precedent" was simply a consequence of that failure to perform. Based on the undisputed facts, the Board rejected GIV's "condition precedent" argument in the following words, with which we agree:

> It is not disputed that Chiron had produced contaminated vaccine and that it was this condition that prevented FDA approval of the Fluvirin (findings 9-14). Chiron, and thus appellant, was therefore responsible for

the lack of FDA approval that caused appellant's inability to deliver and led inexorably to the termination for cause.

Chiron's actions are attributable to GIV because GIV had agreed to sell goods to the government; that is, to act as a wholesaler. Because procuring and delivering the goods was an essential part of the agreement, and because GIV was ultimately responsible for procuring the goods, GIV was responsible for any failures by its supplier. As the Board held, a contractor is generally responsible for the actions of its subcontractors. See DCX, 79 F.3d at 134. The relationship between a wholesaler and supplier is not materially different in this respect than the relationship between a contractor and subcontractor. Hence, Chiron's failure to produce an acceptable supply of vaccine is chargeable to GIV. Because GIV does not contest the finding that it failed to satisfy its obligation to produce acceptable vaccine, the Board properly held that the burden was on GIV to show that its failure was excused, and that GIV failed to satisfy that burden.

B

GIV also argues that if there was a default due to nonperformance, the default should have been excused under FAR 52.212-4(f). The Board characterized this argument as merely a restatement of GIV's first argument, and it held that the FDA's failure to approve the vaccine did not qualify as an "act[] of the Government in either its sovereign or contractual capacity" that was "beyond [GIV's] reasonable control," because it was due to the contamination of Chiron's vaccine that the FDA imposed the embargo and the freeze on domestic lots of Fluvirin.

On appeal, GIV contends that under the plain language of FAR 52.212-4(f), GIV cannot be held responsible Chiron's actions. To support its argument, GIV notes that

the regulation refers to the singular "contractor" rather than the plural "contractor, its subcontractors or its suppliers." GIV also compares FAR 52.212-4(f) to other FAR provisions dealing with reasonable delay, FAR 52.249-8(c) and FAR 52.249-14(a), which explicitly refer to the liability of contractors for defaults of subcontractors. Based on the difference in language, GIV argues that the absence in FAR 52.212-4(f) of any reference to subcontractors is intentional and means that contractors are not liable for production failures by their subcontractors.

GIV's arguments, however, do not establish that FAR 52.212-4(f) should be interpreted to avoid the longstanding common law rule that contractors generally are liable for the unexcused actions of their subcontractors. Dist. of Columbia v. Camden Iron Works, 181 U.S. 453, 461-62 (1901); see also Johnson Mgmt. Group CFC, Inc. v. Martinez, 308 F.3d 1245, 1252 (Fed. Cir. 2002). The fact that other regulations specifically adopt the common law rule does not suggest that FAR 52.212-4(f) should be read to vary from it. That is particularly true in light of prior case law, which construed clauses having language similar to that in FAR 52.212-4(f) to make the contractor liable for defaults by subcontracting entities. See Whitlock Corp. v. United States, 159 F. Supp. 602, 606 (Ct. Cl. 1958) (default clause similar to FAR 52.212-4(f) held to foreclose argument that subcontractor's failure to manufacture contract item was "beyond [the contractor's] control and due to no fault or negligence on its part"); Poloron Prods. v. United States, 116 F. Supp. 588, 594-95 (Ct. Cl. 1953) (similar default clause held to foreclose contractor's argument based on failure of subcontractor to produce materials necessary for contractor to produce contract goods). The regulatory history of the FAR provisions also demonstrates that those provisions were written in light of

accepted commercial practice, which implies that unless the regulation explicitly states otherwise, it should be read in accordance with the accepted common law rule. See 60 Fed. Reg. 48231, 48232 (1995) (final rule) (describing the provisions in FAR 52.212-4 as "contain[ing] the terms and conditions the Team believes are consistent with customary commercial practice by addressing general areas that previous studies have identified as the 'core' areas covered by commercial contracts. Several concepts included in the clause at 52.212-4 represent significant changes from standard Government practices to commercial-like practices."); see also Schaffer v. Weast, 546 U.S. 49, 56 (2005) (where the plain text of a statute is silent on an issue, statutory analysis turns to the "ordinary default rule"). Reading FAR 52.212-4(f) in light of the common law rule confirms that GIV is responsible for the actions of Chiron, as the Board found. Consequently, the failure of GIV to deliver Fluvirin cannot be excused as being beyond GIV's reasonable control, because the non-performance is ultimately attributable to the contamination of Chiron's facilities.

Finally, GIV argues that even if it is responsible for Chiron's actions, the record suggests that the contamination was accidental. However, the excuse provision of the contract explicitly applies only when the nonperformance is "without [the Contractor's] fault or negligence." As noted previously, the burden was on GIV to show that Chiron's failure to perform was excusable. DCX, 79 F.3d at 134. GIV failed to offer evidence that Chiron was without fault in connection with the contamination that occurred in its facilities, which would be difficult to establish in any event because Chiron was the party in position to guard against such risks throughout the manufacturing process. The

Board therefore properly concluded that GIV failed to show that its nonperformance was excused under FAR 52.212-4(f).

<u>AFFIRMED</u>.
