# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- ) | |
| ) | |
| Stobil Enterprise ) | ASBCA Nos. 61688, 61689 |
| ) | |
| Under Contract No. FA3016-18-P-0074 ) | |

APPEARANCE FOR THE APPELLANT:   Mr. Billie O. Stone
                                 CEO

APPEARANCES FOR THE GOVERNMENT:  Jeffrey P. Hildebrant, Esq.
                                 Air Force Deputy Chief Trial Attorney
                                 Heather M. Mandelkehr, Esq.
                                 Lt Col Scott A. Van Schoyck, USAF
                                 Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE SHACKLEFORD

ASBCA No. 61688 is an appeal from a contracting officer's final decision (COFD) denying a contractor claim for $126,000. ASBCA No. 61689 is an appeal from a COFD terminating the subject appeal for default. Both entitlement and quantum are before us in ASBCA No. 61688; only the propriety of the termination for default is before us ASBCA No. 61689. Appellant has elected to proceed under Board Rule 12.2 for small business concerns. A decision under Rule 12.2 shall have no value as precedent, and in the absence of fraud, shall be final and conclusive and may not be appealed or set aside.

Further, the parties have chosen to submit the appeals for decision on the record pursuant to Board Rule 11, without a hearing. Each party has submitted initial and reply briefs and have submitted documents to be considered in deciding these appeals.

## SUMMARY FINDINGS OF FACT

1. In January 2018, the 502d Contracting Squadron (government) issued a Request for Quotation (RFQ) on one contract line item number (CLIN) described as follows:

> Remove Steel Overhead Door and replace with new 25' x 21'
> heavy duty rolling overhead door w/electrical operators. Bldg 84,

JBSA Randolph
See attached SOW dated 9 January 2018[.]

(R4, tab 2 at 1)

2. Paragraph 5 of the RFQ, Delivery/Assembly, states:

*Delivery shall be FOB Destination and included in CLIN prices noted above, unless otherwise and clearly noted by offeror in submitted offer.* The items must be fully assembled and ready for use upon delivery.

(R4, tab 2 at 2)

3. The SOW which was referenced in the RFQ was dated January 9, 2018, and provided, in relevant part, the provisions set forth below:

**PROJECT SCOPE**: The contractor shall furnish all supervision, labor, transportation, materials, tools, incidentals, equipment, and Quality Assurance to remove existing Overhead Door and install new Overhead Door, hardware, and electric motors at building 84, JBSA Randolph Air Force Base (AFB), TX.

**PROJECT DESCRIPTION**: The requirements of this project are but not limited to the following: Remove one (1) each steel overhead door and replace with new 25' by 21' heavy duty rolling overhead door with electric operators.

....

**OVERHEAD DOOR DEMOLITION**:

Remove and dispose of existing overhead doors and hardware.

**OVERHEAD DOOR INSTALL**:

Install 1 each 25' x 21' Heavy duty Rolling Overhead Door
20 Gauge Galvanized Steel flat slat with baked finish
Heavy duty malleable galv. Steel end locks are to be provided

2

Steel angle guides
Bottom weather seal
Electric Operator with photo eyes[.]

(R4, tab 1 at 1)

4. The record reflects that appellant submitted a quote for $11,200 on January 19, 2018 (*see* R4, tab 3 at 5; gov't br. at 2).

5. On January 26, 2018, TSgt Heather Consola , the contract specialist for the government, emailed appellant with regard to its quote, stating:

> I have been conducting the reviews of all quotes submitted
> for this requirement and I just wanted to clarify a few things
> with you based on just the pricing you sent us.
>
> So there was a statement of work that was attached to the
> solicitation  and we just want to make sure that the price you
> gave us includes all that was stated needed to be done?  Does
> it also include the removal and haul away of the old door?  I
> only ask because other contractors either did or didn't realize
> all that needed to be done.

(R4, tab 3 at 4-5)

6. Stobil replied on the same day that its "quote [did] not include the removal and haul away of the old door as well" (R4, tab 1 at 4).

7. On January 29, 2018, TSgt Consola responded by email to appellant as follows:

> Thank you for clarifying.  Would you please provide me a
> quote with the removal and disposal of the old door as well
> since that is stated as needed in the SOW.  I am also attaching
> the Statement of Work so that you can ensure the new quote
> you will be providing is encompassing all that is requested for
> this requirement.

(R4, tab 3 at 3)

8. Appellant responded:

> The quote would be $26,800.00...correction/new drum-plate

3

needed for new models and removal/disposal of old components.

(R4, tab 3 at 1)

9. On February 23, 2018, Contract No. FA3016-18-P-0074 was awarded to appellant in the firm-fixed-price amount of $26,800.00. The one CLIN in that contract required appellant to:

> Remove Steel overhead door and replace with new 25' x 21' heavy duty rolling overhead door w/electrical operators IAW SOW dated 9 January 2018.

(R4, tab 4 at 3)

10. FAR 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JAN 2017), was incorporated into the contract and provided in subsections (d) and (m) as follows:

> (d) *Disputes*. This contract is subject to 41 U.S.C. Chapter 71, Contract Disputes. Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract.
>
> ....
>
> (m) *Termination for cause*. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly

4

terminated this contract for default, such termination shall be deemed a termination for convenience.

(R4, tab 4 at 4)

11. Addendum FAR 52.212-4(C), Changes, was also included in the contract and provided that "[c]hanges in the terms and conditions of this contract may be made only by written agreement of the parties" (R4, tab 4 at 4).

12. On April 25, 2018, appellant sent an email to TSgt Consola regarding the contract, as follows:

> During our teams [sic] inspection of the drum...an unforeseeable concern arose, as well as, a safety issue for our team...the customer....and the governments' [sic] requirement in general. CE [government] personnel was notified and a site visit occurred on today 25 April 2018. The existing drum was ruled possibly damaged by the lead technician and was unable to be unloaded. Evidence discovered [reveals] that the door has been damaged for about 2 yrs; that the motor possibly reversed the enter load; no movement of the load could be accomplished prior to downloading the system; and therefore a decision to continue with the use of the old drum is sought from the government at this point. In the interim, Stobil will obtain a manufacturer[']s cost for a new drum w/plates and have a quote ready pending the government's decision.

(R4, tab 7 at 1)

13. On April 27, 2018, TSgt Consola replied to appellant, stating:

> When you get a moment, could you please call me so we can discuss this. From my understanding, a quote won't be necessary for a new drum because according to the Statement of Work, the door and all components as well as all electrical operators are to be replaced with new and that drum is part of the electrical operation of that door going up. It was also discussed during the site visit after award that the drum was broke and no longer operable and could not be used that it too was to be replaced. There is nowhere in the statement of

5

work stating anything was to be repaired, it was all to be replaced with new items.

(R4, tab 8 at 1-2)

14. Later that same morning, appellant replied to TSgt Consola as follows:

a. The drum is not a part of the electric operations of the type of door specific to this contract.
b. There's no mention in the contract that the drum was broken.
c. There's no mention in the contract that the drum wasn't operational.
d. There's no mention in the contract that the drum was to be replaced.
e. There's no mention in the contract for a new electrical safety shut-down component.
f. There's no mention in the contract for a new rail.
g. There's no mention in the contract for a new cover.
h. There's no mention in the contract for new head plates
(ALL THESE ARE COMPONENTS TO REPLACE "ONLY" IF DETERMINED NEEDED)

According to page one of the SOW dated 9 January 2018, the components identified under the "Overhaul Door Install" list 1. a curtain 2. Guides 3. Bottom Seal 4. Motor[.]

(R4, tab 8 at 1)

15. On May 4, 2018, Bilateral Modification No. P00001 extended the contract completion date to June 8, 2018 (R4, tab 9).

16. By email on May 9, 2018, TSGT Consola advised appellant's representative, Billie Stone, that after reviewing correspondence between the parties, the SOW, and market research, the government would not add additional money to the contract and thus, appellant "is not entitled to any adjustment and we are expecting that all work, to include the new drum and plates, be completed by June 8, 2018" (R4, tab 10).

17. On May 30, 2018, appellant submitted a certified claim to the CO for $126,000, the breakdown of which is as follows: $16,000 for purchase and delivery of materials to the job site, $4,000 for contractor's equipment costs, $6,000 for administrative costs to date, and $100,000 "for harm; undue hardship; and loss of credit

6

standing with the Manufacturer for nonpayment of the supplied materials procured for the Government's requirement" (R4, tab 12 at 1-2).

18. The government reminded appellant on May 31 and on June 1, 2018, that no stop-work order had been issued and that appellant was expected to comply with the terms and conditions of the purchase order (contract) and be completed no later than June 8, 2018 (R4, tab 13 at 1, 3). Appellant did not complete the contract work by June 8, 2018 (and does not contend otherwise). On June 25, 2018, the CO issued a final decision denying appellants claim in its entirety (R4, tab 17). Also on June 25, 2018, the terminating contracting officer (TCO) issued to appellant, a Notice of Termination for Cause pursuant to FAR 52.212-4(m) for appellant's "failure to deliver in accordance with the terms of the contract by the required delivery date of 8 June 18." (Ex. G-3)

19. On July 10, 2018, appellant timely appealed the COFD denying its monetary claim and also timely appealed the termination for cause. We docketed the monetary claim as ASBCA No. 61688 and we docketed the appeal from the termination for cause as ASBCA No. 61689.

## DECISION

*ASBCA No. 61688*

The issue before the Board is whether the contract, including the SOW required the removal of the old drum and the furnishing of a new one. We decide that it does. While the drum is not specifically mentioned in the contract, the language of the SOW makes it clear that appellant was to replace the old with the new and do all necessary to be "fully assembled and ready for use upon delivery." (Finding ¶ 2) Replacement of the drum was necessary for use upon delivery and thus appellant was required to replace it. Accordingly, appellant's arguments to the contrary must fail.

*ASBCA No. 61689*

A termination for default is a drastic sanction that should be imposed only for good grounds and on solid evidence. *J.D. Hedin Construction Co. v. United States*, 408 F.2d 424, 431 (Ct. Cl. 1969). The government bears the burden of proving that the termination was justified. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987). If the government establishes a prima facie case of the contractor's default, then the contractor bears the burden to show that its default was excusable or was caused by the government's material breach. *Military Aircraft Parts*, ASBCA No. 59978, 15-1 BCA ¶ 36,101 at 176,256. These principles apply equally in the case of a termination for cause under FAR 52.212-4(m). *Genome Communications*, ASBCA No. 57267, 11-1 BCA ¶ 34,699 at 170,899, citing *General Injectables & Vaccines, Inc.*, ASBCA No. 54930, 06-2 BCA ¶ 33,401 at 165,593, *aff'd*, 519 F.3d 1360, *supplemented*, 527 F.3d 1375 (Fed. Cir. 2008).

7

Under FAR 52.212-4(m), the government may terminate a contract for cause "in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance." (Finding ¶ 10) It is undisputed that appellant did not complete the work prior to the contract completion date (finding ¶18). Accordingly, the government has established a prima facie case of default. Because appellant was required to supply the drum, as mentioned above, it may not use that work as an excuse to avoid the termination for cause. As such failure was inexcusable, the termination was proper.

## CONCLUSION

The appeals are denied.

Dated: January 18, 2019

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61688, 61689, Appeals of Stobil Enterprise, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8