ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| SupplyCore, Inc. | ) | ASBCA No. 63057 |
| | ) | |
| Under Contract No. SPE8EJ-21-D-0023 | ) | |

APPEARANCES FOR THE APPELLANT:     William E. Hughes, III, Esq.
                                   Emily A. Constantine, Esq.
                                    Husch Blackwell LLP
                                    Milwaukee, WI

APPEARANCES FOR THE GOVERNMENT:    Daniel K. Poling, Esq.
                                    DLA Chief Trial Attorney
                                   Kelly L. Diaz-Albertini, Esq.
                                   Lindsay A. Salamon, Esq.
                                   Anne P. Steel, Esq.
                                   Stacey E. Hirsch, Esq.
                                    DLA Troop Support
                                    Philadelphia, PA

OPINION BY ADMINISTRATIVE JUDGE O'CONNELL

The government filed a motion to dismiss appellant's complaint for lack of jurisdiction and/or failure to state a claim. Appellant filed a response. After reviewing the motion, the Board determined that it should be considered a motion for summary judgment because the government had relied upon numerous documents in the Rule 4 file. The Board notified the parties of this determination in an order dated May 4, 2022. The Board stated in the order that it would consider the government's statement of facts to be a statement of undisputed material facts under Board Rule 7(c)(1). Because appellant had not responded to the government's statement of facts, the Board provided it a second opportunity to respond, and to file an additional brief or other materials.

Appellant filed a supplemental response on June 21, 2022, but it did not respond to the government's proposed facts. The Board now considers them admitted.

The Board also ordered the government to supplement the Rule 4 file with documents concerning a cure notice that DLA issued, and which the parties had referenced in their briefs. Those documents are now included in the record at tabs 411-13.

The Board grants the government summary judgment with respect to counts three and four of the complaint and defers ruling on Count Two. The Board dismisses counts one and five without prejudice for lack of jurisdiction.

<u>STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION</u>

The following facts are undisputed or uncontroverted.

1. This appeal arises from a procurement by the Defense Logistics Agency – Troop Support (DLA) for Special Operational Equipment Tailored Logistics Support (SOE TLS), a program that provides for "the total logistics support for the special operational equipment requirements of DLA customers to include military installations and federal activities worldwide" (R4, tab 1 at 38[1]; tab 43 at 43). The program provided for the purchase of a variety of equipment, including "survival gear, tactical equipment, [and] protective eyewear and vision enhancing equipment . . ." (R4, tab 1 at 38; R4, tab 43 at 43).

2. The solicitation required offerors to submit prices on at least 90% of the items on a price evaluation list (PEL). The items on the PEL were identified by a National Stock Number[2] (NSN) and the name of the manufacturer. Offerors could propose alternates to the items on the PEL. (R4, tab 1 at 52, 62; tab 43 at 45)

3. On January 5, 2021, DLA awarded appellant, SupplyCore, Inc. (SupplyCore), an indefinite delivery, indefinite quantity contract for the SOE TLS Program (compl. ¶¶ 1-3). The contract incorporated SupplyCore's proposed prices as firm fixed ceiling prices and contained various clauses, including FEDERAL ACQUISITION REGULATION (FAR) 52.212-4 CONTRACT TERMS AND CONDITIONS -- COMMERCIAL ITEMS (OCT 2018) (R4, tab 43 at 4, 9).

4. On March 4, 2021, the contracting officer (CO) issued Modification No. P00001, which effectively divided the contract into two further contract numbers: SPE8EJ-21-D-0023D0038 ("Contract 38") and SPE8EJ-21-D-00230039 ("Contract 39"). The former number would be used for purchases below the micro purchase

---

[1] Citations are to the .pdf page number in the electronic file.
[2] National/NATO Stock Numbers are defined in MIL-STD-129, Rev. R Change 2, as: "A 13-digit number that is divided into two parts, the Federal supply class (FSC) number and the national item identification number (NIIN). The FSC is the first four digits of the NSN that establishes its relationship to other items within the same FSC. The NIIN is the last nine digits of the NSN. The first two digits of the NIIN identify the country assigning the two numbers referred to as the National Codification Bureau codes. The remaining seven are serially assigned numbers . . ." (*See* R4, tab 1 at 52).

threshold ($10,000) and the latter for purchases above (Government statement of facts (GSF) ¶ 11 n.1, ¶¶ 16-17).

5.  Between March 8, 2021 and April 5, 2021, DLA issued 169 delivery orders under Contract 38 and 4 delivery orders under Contract 39 for the purchase of "specific ballistic eye wear such as industrial goggles and spectacles" manufactured by Oakley, Inc. (Oakley), or its subsidiary, Eye Safety Systems (ESS) (GSF ¶¶ 18-20; compl. ¶ 15; R4, tab 2 at 1).  The orders required delivery on dates from April 7, 2021 to May 5, 2021 (GSF ¶ 23).  According to SupplyCore, the "vast majority" of the items included in these delivery orders were NSN 4240015253095 (Spectacles, Industrial), which it had priced at $95 each (compl. ¶ 17).  This was the low bid price and the delivery orders incorporated this amount as a firm fixed ceiling price (GSF ¶¶ 15, 22).

6.  On March 26, 2021, ESS informed DLA by email that SupplyCore had not placed any orders for the relevant ESS products (GSF ¶ 25).

7.  On April 26, 2021, SupplyCore informed DLA by email that it was having "significant pricing discussions" with Oakley (GSF ¶ 28; R4, tab 227 at 5).  Thirty minutes later, Oakley informed DLA by email that no agreement existed between Oakley and SupplyCore and that SupplyCore had not placed any orders with Oakley (GSF ¶ 27; R4, tab 226 at 1-2).

8.  On April 27, 2022, SupplyCore stated in an email to Ms. Meghan Michalski, DLA's Fire & Marine Division Chief, that "The problem is not fulfilling the orders, it is simply pricing" (GSF ¶ 30; R4, tab 227 at 4).  Ms. Michalski responded by email later that day, writing:

> Our contracts are firm fixed pricing.  The prices for the NSNs are ceiling prices established at the time of award.  This was made quite clear in the solicitation, during negotiations, at time of award, and during the post-award conferences.
>
> It is completely inappropriate for you to tell me NOW that there is an issue with the pricing after you have been receiving delivery orders for the past 7 weeks.

(GSF ¶ 31; R4, tab 227 at 3-4)

3

9. On April 29, 2021, SupplyCore informed Ms. Michalski that Oakley had refused to honor the price it had quoted during the solicitation process, had twice raised the price, and had refused to fill the purchase orders even at the increased prices (GSF ¶ 32; R4, tab 227 at 1).

10. It is undisputed that SupplyCore failed to deliver any of the equipment by the final deadline of May 5, 2021 (compl. ¶¶ 22-24; GSF ¶ 33). On May 5, 2021, the CO issued a show cause notice to SupplyCore (compl. ¶ 24). The letter stated in part:

> To date no deliveries have been made for the Delivery Orders listed in the attached spreadsheet.
>
> Your failure to complete performance on or before the dates specified by delivery of the entire quantity required by the contract/delivery order constitutes a default of performance. Based on that failure of performance, the undersigned contracting officer is considering termination of the contract/delivery order in accordance with paragraph (m), "Termination for Cause" of FAR clause 52.212-4, Contract Terms and Conditions - Commercial Items . . .

(R4, tab 228 at 1) The CO provided SupplyCore 10 days to respond and "present reasons for your failure of timely performance to the extent that such causes were beyond your control and without your fault or negligence . . ." (*id.*).

11. SupplyCore responded on May 14, 2021, contending that it had obtained "valid quotes" from Oakley, but Oakley and ESS had refused to honor those prices, and had instead increased their prices. SupplyCore did not ask for more time to perform; it instead "recommend[ed] DLA cancel the subject delivery orders . . . ." (GSF ¶¶ 37-38; R4, tab 229 at 1; compl. ¶¶ 22-23, 27) SupplyCore further stated that it was "concerned" about the communications between DLA and Oakley because the "communications may have affected Oakley's willingness to deal directly with SupplyCore" (R4, tab 229 at 2).

12. Three days later, on May 17, 2021, the CO informed SupplyCore by email that "Per your recommendation, all Oakley and ESS NSNs will be removed from SupplyCore's SOE TLS contract" (R4, tab 413 at 2).

13. The CO terminated the delivery orders for cause by letter dated July 15, 2021. He stated that as of the date of the termination letter DLA had not received any of the deliveries. The CO acknowledged SupplyCore's representation that it had obtained valid quotes from Oakley and that SupplyCore had attached various documents to its show cause response that allegedly verified these quotes. The CO

replied, in part, by stating that "the purported Oakley quote dated December 13, 2018 [] displays the 'quote validity' as December 31, 2019, expiring before the SOE TLS contract was awarded on January 5, 2021." The CO stated that SupplyCore failed to submit any correspondence from Oakley or ESS demonstrating that they had refused to fill orders. In fact, he noted that SupplyCore had submitted correspondence from Oakley in which Oakley had invited SupplyCore to place an order. The CO also stated that if DLA reprocured the supplies, SupplyCore would be responsible for any excess costs.[3] (Compl. ¶ 30; GSF ¶¶ 40-43; R4, tab 235 at 1-3)

*Additional Facts Relating to Count Three of the Complaint (Waiver of the Right to Terminate for Cause)*

14. On May 5, 2021, the CO sent SupplyCore a cure notice on an additional 187 delivery orders involving Oakley/ESS products (In other words, a different set of delivery orders on the same contract). These deliveries were not yet overdue, but the CO stated that SupplyCore had "indicated that SupplyCore is currently unable to place orders with the original equipment manufacturers (OEMs) due to ongoing negotiations." The cure notice included a list of the relevant delivery orders. (Compl. ¶ 25; R4, tab 411)

15. SupplyCore responded by letter dated May 14, 2021. Similar to the earlier delivery orders, SupplyCore stated that it had obtained "valid quotes" from Oakley/ESS but that they were refusing to fill the orders and "were not acting in good faith." SupplyCore concluded the letter by stating "SupplyCore recommends DLA cancel the subject delivery orders, and remove all Oakley and ESS NSNSs from SupplyCore's SOE TLS contract." (Compl. ¶ 27; R4, tab 412 at 1-2)

16. On May 27, 2021, the CO wrote by email to SupplyCore, stating "DLA will issue modifications for no-cost cancellations of all the delivery orders identified in the Cure Notice, the delivery orders that became past due after the sending of the Cure Notice, and delivery orders awarded after the Cure Notice was sent . . . ." The CO also stated "[a]dditionally, and in accordance with SupplyCore's recommendation, DLA has removed all Oakley and ESS NSNs from SupplyCore's SOE TLS contracts." (Compl. ¶ 28; R4, tab 413 at 1)

17. SupplyCore has pled that it understood this email from the CO to mean that it was "relieved" of its obligations to deliver the contracted items and that it did not take any further action to address the issues raised by the CO in the show cause notice (compl. ¶¶ 49-50).

---

[3] The CO also acknowledged that the show cause notice had overstated the number of delinquent orders, and that the correct number was 173, which included 169 on Contract 38 and four on Contract 39.

18. SupplyCore has not contended that any of the delivery orders that the CO listed in the cure notice or in his May 27, 2021 email were among those terminated for cause.

19. SupplyCore filed a timely appeal on October 11, 2021. In its initial brief, SupplyCore did not object to the dismissal of Counts One (Excusable Delay) and Five (Defective Specificion), but it opposed dismissal of Count Two (Breach of Implied-in-Fact Contract of Good Faith and Fair Dealing), Count Three (Waiver of Right to Terminate for Cause), and Count Four (Violation of FAR 12.403(b)).

DECISION

The contract's incorporated commercial items clause provided:

> (f) Excusable delays. The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers . . . .

FAR 52.212-4(f); (SOF ¶ 3)

While other FAR default termination clauses specifically state that subcontractor delays are not excusable unless they were beyond the control of both the contractor and subcontractor (for example, FAR 52.249-8(d)), the commercial items clause does not. Nevertheless, the Court of Appeals for the Federal Circuit has held that the commercial items clause incorporates the common law rule that the contractor is responsible for the deficiencies of suppliers and subcontractors. *Gen. Injectables & Vaccines, Inc. v. Gates*, 519 F.3d 1360, 1364-65 (Fed. Cir. 2008) (*Gen. Injectables I*), *opinion supplemented and reh'g denied*, 527 F.3d 1375, 1378 (Fed. Cir. 2008) (*Gen. Injectables II*). Absent contractual language to the contrary, contractors are bound by the unexcused nonperformance of their subcontractors. *Gen. Injectables II*, 527 F.3d at 1378. This rule applies even if the contract specifies a sole source. *Bromion, Inc. v. United States*, 411 F.2d 1020, 1023-24 (Ct. Cl. 1969); *Demusz Mfg. Co.,* ASBCA No. 55311, 07-1 BCA ¶ 33,463; *Gen. Ship Corp. v. United States*, 634 F. Supp. 868, 869 (D. Mass. 1986).

6

For purposes of this opinion, the Board will treat Oakley/ESS as a sole source. But we observe that the contract allowed SupplyCore to propose alternate products (SOF ¶ 2) and that SupplyCore does not contend that it submitted alternative products.

The commercial items clause further provides:

> (m) Termination for cause. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance.

FAR 52.212-4(m).

A termination for cause is a government claim for which DLA bears the burden of proof. *DCX, Inc. v. Perry*, 79 F.3d 132, 134 (Fed. Cir. 1996). DLA has met this burden because it is undisputed that SupplyCore failed to make timely delivery of the contract goods (SOF ¶ 10). The burden of proof shifts to SupplyCore to show that the delay was beyond the control of both SupplyCore and Oakley/ESS. *Gen. Injectables I*, 519 F.3d at 1363.

As described above, in its response to the show cause notice (SOF ¶¶ 11), SupplyCore squarely placed the blame on Oakley/ESS for its failure to perform. In its complaint, SupplyCore continued to blame Oakley/ESS:

> 19. The $95 price for NSN 4240015253095 was quoted to DLA by SupplyCore based on representations made by Oakley to SupplyCore.
>
> 20. Some of the Delivery Orders specified NSNs for which ESS was the manufacturer.
>
> 21. The delivery dates for the Delivery Orders were between April 6, 2021 and May 5, 2021.
>
> 22. Following receipt of the Delivery Orders, SupplyCore attempted to fill those Delivery Orders by placing orders with Oakley, ESS, and a distributor named Galls.
>
> 23. Oakley refused to honor the $95 price for NSN 4240015253095 quoted by SupplyCore.

\*\*\*\*\*\*\*\*\*\*\*\*

58.  The Delivery Orders issued by DLA specified the procurement of NSNs manufactured by Oakley.

59.  By specifying the procurement of NSNs from a particular manufacturer, DLA warranted that the NSNs were reasonably available from that manufacturer.

60.  The NSNs to be acquired from Oakley were not reasonably available based on Oakley's preferred relationship with another SOE TLS contractor, and its resulting refusal to deal fairly with SupplyCore.

While SupplyCore contends that Oakley acted unfairly, DLA is not responsible for Oakley's actions and DLA did not warrant that "the NSNs were reasonably available from that manufacturer," as SupplyCore alleges in paragraph 59 of the complaint.  In *Demsusz*, the Board held that "the law [is] clear that when the Government directs use of a sole source it represents only that the requirements of the contract can be met by use of the item and not that the item will be properly manufactured or delivered on time." *Demsusz*, 07-1 BCA ¶ 33,463 at 165,884 (citing *Alabama Dry Dock & Shipbuilding Corp.*, ASBCA No. 39215, 90-2 BCA ¶ 22,855 at 114,811-12).  Similarly, a district court ruled that when a mandatory subcontractor breaches its subcontract, the "Court will not hold the Government liable for a breach of a contract to which it was not a party.  If Elliott breached the contract, GSC should sue Elliot . . . ." *Gen. Ship Corp. v. United States*, 634 F. Supp. at 870.

Finally, in a recent opinion, the Federal Circuit considered a claim by a contractor that suffered increased costs after a subcontractor raised its price.  The prime contractor attempted to perform the work itself, but experienced cost increases, which it sought to recover from the government.  The Federal Circuit rejected the contractor's various theories, observing, among other things, that when the contractor entered into a firm fixed price with the government, one of the risks that it accepted was a change in the market price of the product that it was buying from the subcontractor. *U.S. Aeroteam, Inc. v. United States*, --- Fed. App'x ---, 2022 WL 2431626 at \*4-5 (Fed. Cir., July 5, 2022).

In summary, a prime contractor that entered into a firm fixed price contract with the government is usually not entitled to relief from the government when its subcontractor or supplier increases its price or fails to perform.  With this legal framework in place, the Board turns its attention to the five counts in the complaint.

8

*Count One – Excusable Delay*

In Count One, SupplyCore pled, in essence, that Oakley's failure or refusal to perform is an excusable delay for which it is entitled to an extension of time. The government moves to dismiss for lack of jurisdiction, contending that SupplyCore never submitted a claim for a time extension to the CO. SupplyCore does not dispute this and does not oppose dismissal of count one (app. br. at 1).

The Board agrees that we lack jurisdiction to consider count one because SupplyCore never submitted a claim for a time extension to the CO as required by the Contract Disputes Act, 41 U.S.C. § 7103(a)(1), and controlling precedent. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327-29 (Fed. Cir. 2010). Count One is dismissed.

*Count Two - Breach of Implied-in-Fact Contract of Good Faith and Fair Dealing*

In Count Two, SupplyCore contends that DLA breached the implied duty of good faith and fair dealing. To the extent that this count contains any substantive allegation, it is contained in the following paragraph:

> 41. Upon information and belief, following the issuance of the Delivery Orders, DLA had communications with Oakley which interfered with, and impaired, SupplyCore's ability to obtain reasonable pricing for the NSNs manufactured by Oakley.

(Compl. ¶ 41).

All of the additional allegations in Count Two are formulaic legal contentions.[4]

A. The Board Possesses Jurisdiction

The Board will first address DLA's contention that we lack jurisdiction to consider this claim, which DLA raised for the first time in its reply brief. DLA relies

---

[4] For example:
  42. DLA's communications with Oakley constituted a breach of DLA's implied duty of good faith and fair dealing.
  43. SupplyCore was damaged by DLA's breach of its implied duty of good faith and fair dealing.

(Compl. ¶¶ 42-43).

9

upon our decision in *Chugach Federal Solutions, Inc.*, ASBCA No. 61320, 20-1 BCA ¶ 37,617, in which the Board dismissed the contractor's breach of the duty of good faith and fair dealing theory. But *Chugach* involved a contractor claim for money. *Chugach*, 20-1 BCA ¶ 37,616 at 182,597; *Chugach Federal Solutions, Inc.*, ASBCA No. 61320, 19-1 BCA ¶ 37,314 at 181,492. In this appeal, the Board understands SupplyCore to be raising the duty of good faith and fair dealing merely as a defense to the government's claim. When a contractor raises a defense to a default termination but does not seek the payment of money or the adjustment of contract terms, the contractor need not submit it to the CO before asserting it at the Board. *Securiforce Int'l America, LLC v. United States*, 879 F.3d 1354, 1362-63 (Fed. Cir. 2018). Accordingly, the Board possesses jurisdiction to consider this count of the complaint.

      B.      The Board Will Defer Ruling on Count Two

"'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.'" *Metcalf Const. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981)). This implied duty "'cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions.'" *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019) (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010)). The implied duty "is limited by the original bargain: it prevents a party's acts or omissions that, though not proscribed by the contract expressly, are inconsistent with the contract's purpose and deprive the other party of the contemplated value." *Metcalf*, 742 F.3d at 991. A breach of the implied duty occurs when a party fails to abide by the implied "'duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.'" *Dobyns*, 915 F.3d at 739 (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)).

The record developed to date shows that Oakley and ESS sent emails to DLA, informing DLA that SupplyCore had not entered into a contract with Oakley or ESS and had not placed any orders for the items at issue (SOF ¶¶ 6-7). SupplyCore has identified one document in the record that suggests that there were verbal conversations between DLA and Oakley (R4, tab 412 at 11). SupplyCore also contends that DLA has withheld documents from the Rule 4 file that evidence communications between DLA and Oakley and has refused voluntary discovery (app. supp. br. at 5).

While the Board agrees with DLA that SupplyCore's allegations to date are conclusory and that the current record does not support a breach of the duty of good faith and fair dealing, we are concerned about SupplyCore's contention that DLA has not filed a complete account of the communications between DLA and Oakley. Under

10

the circumstances, the Board believes that the best course of action is to defer ruling on DLA's motion per Board Rule 7(a) until after SupplyCore has had the opportunity to conduct discovery on this issue. Once the record is more fully developed DLA may renew its motion on Count Two.

> ### *Count Three – Waiver of Right to Terminate for Cause*

The government can waive its right to terminate a contract for default. Waiver is an affirmative defense, which the appellant bears the burden to prove. To prove waiver, appellant must show:

> (1) failure to terminate within a reasonable time after the default under circumstances indicating forbearance, and

> (2) reliance by the contractor on the failure to terminate and continued performance by him under the contract, with the Government's knowledge and implied or express consent.

*Bulova Technologies Ordnance Sys.* LLC, ASBCA No. 59089, 18-1 BCA ¶ 37,183 at 180,987 (citing *DeVito v. United States*, 413 F.2d 1147, 1154 (Ct. Cl. 1969)).

SupplyCore does not present any arguments with respect to the first *DeVito* factor. Nor could it, as the record reflects that the CO notified SupplyCore three days after receiving its response to the show cause notice that DLA would remove the Oakley/ESS products from SupplyCore's contract (SOF ¶ 12).

The second *DeVito* factor requires the contractor to show reliance on the government's failure to terminate and continued performance with the government's knowledge and consent. *DeVito*, 413 F.2d at 1154. This factor has little relevance in a situation where SupplyCore proposed that the work be removed from the contract, the CO agreed to do that three days later, and SupplyCore admits that it stopped working (SOF ¶¶ 11-12, 17). SupplyCore has not pled a *DeVito* waiver.

SupplyCore nevertheless claims to have been misled by the CO's May 27, 2021 email in which he replied to SupplyCore's response to the cure notice. The CO's email contains two key sentences:

> [I]n order to prevent further procurement delays of critically needed supplies, DLA will issue modifications for no-cost cancellations of all the delivery orders identified in the Cure Notice, the delivery orders that became past due after the sending of the Cure Notice, and

11

> delivery orders awarded after the Cure Notice was sent
> (please see the attached spreadsheets for the total).
> Additionally, and in accordance with SupplyCore's
> recommendation, DLA has removed all Oakley and ESS
> NSNs from SupplyCore's SOE TLS contracts.

(Rule 4, tab 413 at 1)

SupplyCore alleges that it interpreted this email to mean that it was "relieved of any further obligation" to deliver the Oakley/ESS NSNs (compl. ¶ 49). It contends that based on the CO's statement that "'DLA has removed all Oakley and ESS NSNs from SupplyCore's SOE TLS contracts'" that DLA waived the right to terminate for cause the delivery orders that are the subject of this appeal (compl. ¶ 51). The Board disagrees. Reading the email with even a modicum of care would have indicated that the CO never promised a no-cost cancellation for the delivery orders that were the subject of the show cause notice.

In the May 27, 2021 email, the CO only promised no-cost cancellations for the delivery orders that were referenced in the cure notice and that were not in default as of May 5, 2021. Lest there be any confusion, the CO attached a spreadsheet that listed the delivery orders to which he was referring (R4, tab 413 at 1).

To support a contention that it was misled, SupplyCore needed to identify delivery orders on the May 27, 2021 list that the CO terminated for cause. It has not done so. Thus, the CO made no false promises and a reasonably prudent contractor could not have read his email to be a waiver of the right to terminate for cause delivery orders that were in default.

There are no disputed material facts and DLA is entitled to judgment as a matter of law on SupplyCore's waiver count.

*Count Four – Violation of FAR 12.403(b)*

When the parties entered into the contract in January 2021, FAR 12.403(b) provided that a CO may only terminate a commercial items contract for convenience or cause under FAR 52.212-4 when it is "in the best interests of the Government" to do so. SupplyCore denies that the termination for cause was in the best interests of the government, but it does so only in four terse paragraphs in Count Four of the complaint. In the complaint, SupplyCore does not say much more than that it

12

disagrees with the CO's decision to terminate. The closest that it comes to a non-conclusory allegation is as follows:

> 55. The Termination for Cause of the Delivery Orders under Contract 0038 and Contract 0039 was not in the best interest of the Government because a Termination for Convenience would have served all of the Government's needs under the circumstances.

(Compl. ¶ 55).

SupplyCore does not elaborate on this in its brief, which contains just over one page of argument (app. br. at 6-7). Thus, SupplyCore does not explain why a termination for convenience would have served all of the government's needs when a termination for cause gave the government the option of collecting excess reprocurement costs from SupplyCore. *Double B Enterprises, Inc.,* ASBCA No. 52010, 01-1 BCA ¶ 31,396 (*see* SOF ¶ 13).

The remainder of SupplyCore's argument is premised upon the contention that the CO proposed to issue a no-cost termination (app. br. at 7). As we have already explained, the CO never proposed or offered to issue a no-cost termination for the delivery orders that are the subject of this appeal.

There is no material dispute of facts on this issue. The government carried its prima facie case for default by demonstrating that SupplyCore failed to perform on time. *Gen. Injectables I*, 519 F.3d at 1363. SupplyCore has not demonstrated that it is entitled to a hearing. The Board grants the government summary judgment on count four.

### Count V – Defective Specifications

The government has moved to dismiss this count because SupplyCore failed to submit a claim to the CO. SupplyCore does not dispute this and does not oppose dismissal of this Count. It further states that it may submit a claim to the CO on this issue.

Accordingly, the Board will treat Count Five as withdrawn. It is dismissed without prejudice.

<u>CONCLUSION</u>

The Board grants the government summary judgment on Counts Three and Four of the complaint and defers ruling on Count Two.  Counts One and Five are dismissed without prejudice.

Dated:  September 7, 2022

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63057, Appeal of SupplyCore, Inc., rendered in conformance with the Board's Charter.

Dated:  September 19, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

14